May it please the Court, I'm Joran Lyons, appearing pro bono on behalf of Petitioner Sue Hwashee in this matter. There are two primary issues in this case. The agency's complete failure to address the Respondent's withholding of removal application and the agency's determination of former resettlement with respect to her asylum application. I'm going to address the withholding application first. And the issue here is where an applicant is a citizen of Burma as well as a citizen of Taiwan. May the Immigration Judge and the Board of Immigration Appeals refuse to adjudicate an application for withholding of removal as to Burma. In this respect, I would note the record at page 58, the Court recognizes that the Respondent is a Burmese citizen and designated Burma, Taiwan, and for some reason the People's Republic of China as permissible countries of removal. The But Burma was not the proposed country of removal, was it? Taiwan was the country of removal the Immigration Judge stated in the order. Right. And under the circumstances, is there any evidence that Ms. Hwashee would be, her life or freedom would be threatened if she were to return to Taiwan? No. The Petitioner did not assert an asylum or withholding claim as to Taiwan. How is she eligible for withholding removal to a country that no one is trying to send her to? Your Honor, there are two points here. Again, the Immigration Judge did designate Burma as a potential country of removal at a preliminary hearing in this matter. Moreover, the regulation at 8 CFR 1240.12d states that the Homeland, Department of Homeland Security is not bound by any country of removal stated by the Immigration Judge and may affect removal to any country listed in INA 243, excuse me, 241B3. The Respondent is a national of Burma as well as a national of Taiwan on this record. And she certainly could be removed to Burma. She was born in Burma. She was raised in Burma. She has more substantial ties to Burma than she ever had to Taiwan. And both the Asylum Office and the Executive Office for Immigration Review determined that she is a Burmese national as well as a Taiwanese national. If that decision is eventually made, in other words, they come back and say we're going to send you to Burma, would you not be able to come back and challenge that at that point? Pardon me. We should be able to come back. Would you still challenge being sent to Burma if that in the future is decided to be done? The only remedy in that instance would be a request for the Board of Immigration Appeals to exercise its sua sponte authority, which the Board itself has said should be used sparingly to adjudicate what they would consider a late motion to reopen. And that is not an acceptable remedy in a situation in which we're dealing with a petitioner who, in fact, might be removed to a country where she has very substantial reasons to fear harm. The ---- Isn't the key whether she's settled in Taiwan? That's the second issue in this case, Your Honor. And the firm resettlement did get more discussion than the withholding issue in the adjudication of this case before the agency. There are two points as to firm resettlement. The first question is whether she, in fact, properly obtained Taiwan nationality. There's evidence in the record that she falsely registered in a family friend's household in order to obtain that passport. However, it is true that Taiwan did renew that passport on subsequent occasions, so it may be the case that they have decided to recognize her as a national. In that instance, the burden would shift from the petitioner ---- excuse me, from the government to the petitioner to demonstrate that she remained in Taiwan only as long as necessary to arrange onward travel as a consequence of her flight from Burma. She remained there for an 18 ---- Why is it that the burden shifts? The burden ---- Pardon? You said the burden shifts. The burden would shift from ---- the burden is on the government to show that she was firmly resettled in Taiwan, in that she received an offer of permanent status in Taiwan while she was there. The record may establish that, and there is some evidence in the record to establish that. So if the Court were to find that she did receive an offer of proper offer of Taiwanese nationality while in Taiwan, the burden then shifts. That doesn't answer the whole firm resettlement question, but it shifts the burden to the petitioner to show that she remained in Taiwan only long enough to arrange onward travel and did not develop substantial ties while she was there. She was there for an 18-month period, which is scarcely more than the minimum one year necessary to obtain a travel document so that she could move on. It was clear when she traveled to Taiwan that her intent was not to reside there, but to be able to obtain documents to get to the United States. I'm not sure why you're ---- keep insisting that the burden shifts to you. If the respondent was properly offered Taiwanese nationality while in Taiwan, and there is some question in this record as to whether that's the case, she testified consistently that she was registered in the household of a family to which she did not belong for the sole purpose of obtaining Taiwanese nationality. So under Ali, this Court has held that somebody who surreptitiously enters a country ---- I would analogize to that in that she obtained Taiwanese nationality essentially under false pretenses. But Ali has a difference. She never received an Ali of any offer of recognition for permanent residency. Here she got a passport indicating she was in essence a citizen of Taiwan and for some 15, 16 years renewed that passport. Correct. And the question is I don't believe that Taiwan conducted a reinvestigation of her nationality or how she obtained her original passport each time she renewed it. I think it's a ministerial action done at the consulate. But you're correct. There are some factual differences between Ali. I simply refer to it for the fact that someone cannot ---- Ali holds someone cannot obtain nationality through adverse possession. I would ask this Court to consider analogous obtaining nationality through fraud. It's not a proper acquisition of that nationality. And were the true facts known to that government, then she would not have obtained that nationality. Are you actually asking us to treat this in that fashion? Because, in effect, if the government of Taiwan reads this record and concludes that the court of the United States has determined that she acquired her original citizenship there through fraud, doesn't that leave her in a really bad spot? If you're saying you don't want her to go back to Burma, she wants to stay here. But if she can't stay here, if ultimately she loses, why would you want to destroy her chances of going to Taiwan as opposed to Burma? Your Honor, I'm dealing with the record as it is. These were her consistent statements on the record. The immigration judge did not make a finding of any lack of credibility. In fact, she made no credibility finding whatsoever. By virtue of the fact of making no such determination, isn't it tantamount to Well, Your Honor, the judge explicitly refused to make a credibility finding. And there is case law treated as if it were an adverse credibility determination. Neither the BIA nor the IJ was willing to make such a finding. But the impact of it is the same, is it not? We need to send it back so that they can make such a determination? That would be helpful. There are a number of things in this record that could benefit from an additional agency review. She said one thing. Yes. If she's right, then she satisfies 8 CFR 1208.15a. If the government contradicts that, there's a determination. That's one thing. It seems like she made those allegations to satisfy that regulation. Neither the IJ nor the BIA made any determination about whether it was false. They just let it go as far as any credibility is concerned. I think under our case law, that's the same as an adverse credibility determination without any substantial evidence, isn't it? Your Honor, as I understand, Navas v. INS, which is a case from this circuit from 2000, where there's no explicit credibility finding, the Respondent's testimony for purposes of appeal should be taken as true. Well, if that's the case, then you win, right? Well, we should have at least a remand for further consideration from the agency. Yes, Your Honor. I'm going to stop here with about one minute remaining. Okay. Thank you. Very good. We'll now hear from the government. Please proceed. May it please the Court, Jessica Sherman on behalf of the Respondent. Ms. Xi has failed to demonstrate that the record compels a finding that she was not firmly resettled in Taiwan. Ms. Xi was issued a Taiwanese passport, which she maintained for 21 years. She was recognized as a Taiwanese national. And under these circumstances, the Board properly found that she was firmly resettled in Taiwan. And because of this firm resettlement, the agency did not err in pretermitting her asylum and withholding applications to Burma. Did the immigration judge ever say firmly resettled in his opinion? I believe so. I mean, the finding was that she had firmly resettled. The BIA said that. But did the immigration judge ever make that finding? I believe so, Your Honor. I mean, I don't look at the decision. But, I mean, it was a firm resettlement finding that she was barred from asylum. The BIA said that, but I think his finding is a little bit different. Or, sure, her finding, I think. But it was, and she refused to make a credibility finding. I think that this issue is not about credibility, but rather burden of proof. Well, let me ask you on that. It's not a – Smith was talking about Mendoza, Mendenbough, and I read there concluding the BIA violated the petitioner's right to due process by implying an adverse credibility finding on review, remanding. And that follows a LADA, a 2009 circuit case, indicating when credibility is assumed, denial of an asylum claim can be plain error. So we can't – can we then – I don't think that this case comes down to credibility. Because the IJ and the board found that she was a citizen of Taiwan based on her having a Taiwanese passport for 21 years, renewing that passport for 21 years, it was – the burden then shifts under 8 CFR 1208.15 to her, to Ms. Shi, to prove that she was not so – not firmly resettled. And the agency determined she did not meet her burden of proof in that regard. It wasn't a credibility determination, but rather a burden of proof finding, which is separate. And they – the agency determined that she didn't provide evidence to show she wasn't firmly resettled. There are two bases to show you're not firmly resettled. You can show that you only remained in Taiwan as long as necessary in order to arrange onward travel. And the agency found that her contention that she was only in Taiwan for a year and a half in order to obtain onward travel to the United States was unfounded, because she remained there – although she only remained there for a year and a half, she didn't provide any evidence that she had to go through Taiwan in order to come to the United States, that she couldn't have gone straight from Burma. And she doesn't explain why, even if that were the case, why she would maintain a passport for 21 years after she was already safely in the United States if she really did not want any ties or protections from the country of Taiwan. She would not need to maintain a passport for 21 years. And I think it's important to note that the only reason that her passport is no longer valid is because she chose to let it expire in 2004. In Maharaj, this Court held that the fact that an alien lets their travel documentation or travel authorization expire does not preclude a finding of firm resettlement. It's not as if the Taiwanese government realized that she had obtained it surreptitiously. And she's failed to provide evidence that the fact that she obtained it surreptitiously bars a finding of firm resettlement. Although Petitioner relies on this Court's decision in Ali, Ali is distinguishable for several reasons. In Ali, the alien entered without inspection into a safe third country and never applied for any benefit from that country. And in Ali, the Court noted that the issue in finding firm resettlement was whether there was a government dispensation. Here there was. She applied to the government of Taiwan for a passport, and she continued to renew that passport for 21 years. And also in Ali, there was actual evidence in the record that she could not return, and here there's no evidence that she could not return to Taiwan because it was her burden to prove that she was not firmly resettled in Taiwan or that she could not return there. And she failed to provide any evidence of that, the firm resettlement standing. I have difficulty in seeing how there could be a finding of resettlement based on her staying there six months longer than actually necessary and renewing a passport. If the key issue is resettlement, does she ever go back there? The record doesn't indicate she did. Resettlement seems to me that you have to actually do something to resettle her. Well, under the language of the regulations, it doesn't talk about the intent of the petitioner. It doesn't talk about whether they went back. The issue under the plain language of the regulations is whether before arriving in the United States, she received an offer of permanent resident status, citizenship, or other type of permanent resettlement. Now, I mean, a passport that she was able to renew and able to return to Taiwan, I think is clear evidence, and this Court held in Maharaj, it is direct evidence of a firm resettlement offer. So the mere fact that she never went back I think is somewhat irrelevant. Well, if you're looking at what resettlement actually means, it seems to me it's relevant. Under the language of the regulation, though, that's not one of the factors that's looked at as far as the firm resettlement. The issue for firm resettlement under the regulations is whether they received an offer to stay, not whether they accepted that offer or whether they did remain in that country. What was the offer to stay? A passport that she renewed for 21 years. Turning to the withholding application, I think it's important to note that although initially the immigration judge designated both Burma and Taiwan, the removal order is only to Taiwan, and there's absolutely no evidence that she would be removed to Burma. She's at no risk, so therefore she's at no risk of persecution there. She has not cited any authority for the proposition that where an applicant has been recognized as a national of one country, and that's the country where she is ordered removed, a withholding claim to another country must be adjudicated. Under the regulations the government prepared to stipulate for purposes of this case that in the event she is ultimately removed to Burma that she can reopen this issue? Well, I don't have the authority to stipulate to that today. The regulations, some of which were enacted after the immigration judge's decision in this case, provide that the immigration judge must give notice of the country of removal before an alien can be removed there. Now, because Burma was not designated as a country or not, because there was no alternative removal order to Burma under 8 CFR 1240.49C. This is really like almost like a ripeness issue, is it not? Correct. She's not been ordered to go back to Burma under the government's position. But if it changes its mind, we want to be sure that she's not caught in some kind of a ripeness. Correct, Your Honor. And I understand. Can't get any relief or at least have it reconsidered. Correct. And under the regulations, because now the I.J. is required to give notice of the country of removal and afford the alien an opportunity to apply for relief from that country before the case before she could be removed from Burma, she would have to they would have to give her an opportunity to apply. She would have an opportunity under the regulations because the government construes them. Correct. And to raise this issue, talk about whether it be a cat problem. Correct. And that would be either by filing a motion to reopen or asking DHS to join in a motion to reopen. And the commentary to the regulations that were enacted in 2005 show that actually recognized that DHS could join in reopening where it's an untimely or numerically barred motion to reopen. Again, because the evidence shows that Ms. Shi maintained a Taiwanese passport for 21 years, was able to return to that country, receive the protection of that country for 21 years, and it only expired because she chose not to renew it again, she's failed to present any evidence to show that the Taiwanese government would not renew that passport again at this time, and she failed to rebut the presumption that she was firmly resettled in Taiwan, the Court should deny the petition for a review. If the passport is renewed, does that indicate she can return? Yes, Your Honor. Because in the previous passports that are in the record, it shows that it has a stamp saying she can return. Could she return as a person who would be settled there, or is it a situation where they are looking at someone who has been 17 years in the United States, has no real reason to resettle there at all? Would they accept her? I believe under – I mean, having a valid – I'm not familiar with Taiwanese law, but I think having a valid Taiwanese passport that indicates that you can return to that country, they would allow her to return. She's never, ever expressed any – Return to stay? Return to stay. Or just return to be there temporarily? No, I mean, I believe that she would be able to return and live there permanently, and she has never expressed any fear that she would not be able to do so or that her life there would be restricted in any way. I have another question that it seems very odd to me, as an exercise of prosecutorial discretion, that you choose to seek to deport a 60-year-old woman that's been in the United States for 17 years, when you have all the other thousands of aliens, some of whom have committed crimes and so forth. It seems very odd to me that all of a sudden we're dealing with this woman, 60-year-old woman, who's been here 17 years. Well, Your Honor, DHS could – I mean, affirming a removal order by an immigration judge is not the same thing as DHS actually effecting removal. And DHS, in its discretion, could choose to allow Ms. Xi to remain in the United States and not carry out the removal order based on her age. Who could? DHS and ICE, in their discretion, could choose to permit her to remain and this Court's affirmance of a final order of removal would not have any effect on that. And we know that ICE is very warm. Thank you, Your Honor. Thank you for your presentation. We have a little bit more rebuttal from Mr. Lyons. Thank you, Your Honor. I'd like to take this brief opportunity to address something the government just mentioned with respect to the regulations. I think we have a very different reading of whether or not the regulations require any notice to the respondent before she could be removed to a country other than Taiwan. Again, at 8 CFR 1240.12b, where a respondent is ordered removed from the United States, the immigration judge shall identify a country or countries in the alternative to which the alien's removal may in the first instance be made under 241b of the Act. In the event that the Department of Homeland Security is unable to remove the alien to the specified or alternative country, the order of the immigration judge does not limit the authority of the Department of Homeland Security to remove the alien to any other country as permitted by Section 241b of the Act. I'm not seeing in that language, which was enacted in 2005, or excuse me, revised in 2005, where the case goes back to the immigration judge to adjudicate a withholding claim. Now, there's a discretionary agency action that could be taken in the form of adjudicating a motion to reopen, but that's not the same thing as giving her the opportunity to have a hearing on her application for mandatory relief in the form of withholding of removal. So I think we have very different readings of the regulations. I just wanted to call that to the Court's attention. Thank you. Thank you. And that's not the regulation I cited. I just want to clarify. Correct. That is not. 40.49c. Yes. And that is where the authority that the IJ is required to notify the alien of a country of removal. Okay. Thank you all for your presentation. The case of She v. Holder is submitted.
judges: Hogan, Hug, Smith M.